# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Magistrate No. 11-6107 (MAS) |
| v. | : | |
| MAXIM HEALTHCARE SERVICES, INC. | : | **CRIMINAL COMPLAINT** |

I, Eugene H. Fayer, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

From in or about 2003 to in or about 2009, in the District of New Jersey, and elsewhere, defendant

### MAXIM HEALTHCARE SERVICES, INC.

did knowingly and willfully conspire and agree with others to devise a scheme and artifice (1) to defraud health care benefit programs, and (2) to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, a health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, contrary to Title 18, United States Code, Section 1347. In violation of Title 18, United States Code, Section 1349.

I further state that I am a Special Agent with the United States Department of Health and Human Services, Office of the Inspector General, and that this complaint is based upon the following facts:

### SEE ATTACHMENT A

continued on the attached page and made a part hereof.

_____
Eugene H. Fayer, Special Agent
United States Department of
Health and Human Services
Office of the Inspector General

Sworn to before me and subscribed in my presence,

September 12th, 2011, at Newark, New Jersey

Honorable Michael A. Shipp                    _____
United States Magistrate Judge                Signature of Judicial Officer

ATTACHMENT A

I, Eugene H. Fayer, state that I am a Special Agent with the United States Department of Health and Human Services, Office of the Inspector General. I have personally participated in this investigation and am aware of the facts contained herein, based upon my own investigation, as well as information provided to me by other law enforcement officers. Because this Attachment A is submitted for the limited purpose of establishing probable cause, I have not included herein the details of every aspect of the investigation.

### Summary

Beginning in or about 2003, and continuing through in or about 2009, within the District of New Jersey, and elsewhere, MAXIM HEALTHCARE SERVICES, INC. (referred to herein as "MAXIM"), acting through certain of its former officers and employees, including senior employees, knowingly and willfully conspired, confederated and agreed with others to execute a scheme and artifice to defraud health care benefit programs, including state Medicaid programs and health care programs administered by the U.S. Department of Veterans Affairs (together referred to herein as "government health care programs"). Additionally, MAXIM knowingly and willfully conspired, confederated and agreed with others to defraud government health care programs of more than approximately $61 million by means of materially false and fraudulent pretenses, representations, and promises in connection with the delivery of and payment for health care benefits, items, and services.

### Government Health Care Programs

At all times relevant to this Statement of Facts, the Medicaid Program, as established by Title XIX of the Social Security Act and Title 42 of the Code of Federal Regulations, authorized federal grants to states for medical assistance to low-income persons who are blind, disabled, or members of families with dependent children, or qualified pregnant women or children (herein referred to as "Medicaid beneficiaries" or "Medicaid recipients").

States electing to participate in the Medicaid program had to comply with the requirements imposed by the Social Security Act and regulations of the Secretary of the United States Department of Health and Human Services. States participating in the Medicaid program created various state Medicaid programs, reimbursing health care practitioners, health care facilities, or health care plans for rendering Medicaid-covered services to Medicaid beneficiaries.

The federal government reimbursed states for a portion of the states' Medicaid expenditures based on a formula tied to the per capita income in each state. The federal share of Medicaid expenditures (otherwise referred to as "federal financial participation" or "FFP") varied from a minimum of approximately 50% to as much as approximately 74% of a state's total Medicaid expenditures.

The U.S. Department of Veterans Affairs (referred to herein as "Veterans Affairs"), through various programs, reimbursed health care practitioners, health care facilities, and/or health care plans for rendering Veterans Affairs-covered services to eligible veterans and their eligible dependents.

**MAXIM's Participation in Government Health Care Programs**

MAXIM conducted business in a number of different segments within the health care industry. MAXIM derived a substantial portion of its revenue and profits from the staffing of health care providers to patients requiring health care services. Within this market segment, MAXIM provided staffing of care providers to facilities, such as hospitals, nursing homes, and schools, as well as directly to patients requiring care at home.

Beginning in or about 2003, and continuing through in or about 2009, MAXIM participated in more than 500 government health care programs, receiving reimbursement from these programs for health care provided to patients. During that time, MAXIM received more

2

than $2 billion in reimbursements from government health care programs in 43 states based on billings submitted by MAXIM for services.

MAXIM derived more than half of its annual revenue from reimbursement by government health care programs for care provided through MAXIM's Homecare Division to patients in their homes. MAXIM provided various levels of in-home care, ranging from assistance with daily living activities and personal care by unskilled home health aides, to the provision of a full range of nursing services by Registered Nurses, Licensed Practical Nurses, Licensed Vocational Nurses, and Certified Nursing Assistants.

At all times relevant to this Statement of Facts, government health care programs required that providers such as MAXIM meet certain qualifications. In addition, government health care programs required that, in order to receive reimbursement, providers submit and/or maintain certain documentation verifying that those qualifications had been met. Specific requirements varied among health care programs, but all generally had licensing requirements, enabling the health care program to monitor the providers. In order to obtain a license, providers were generally required to provide documentation verifying, among other things, that they had adequate staff to provide care to patients and to supervise the provision of care to patients. In addition to the licensing requirement, providers were generally required to submit and/or maintain documentation verifying, among other things: (1) care provided to patients; and (2) required training and qualifications of caregivers.

**The Conspiracy**

Beginning in or about 2003, and continuing through in or about 2009, certain aspects of MAXIM's operations emphasized sales goals at the expense of clinical and compliance responsibilities, as reflected in certain aspects of its culture, training, incentive compensation, and allocation of personnel resources. In addition, during this time period, MAXIM did not have in place appropriate training and compliance programs to prevent and identify fraudulent conduct.

Beginning in or about 2003, and continuing through in or about 2009, MAXIM, through certain of its former officers and employees, including senior employees, conspired to defraud government health care programs. It was part of the conspiracy that:

(a) MAXIM, through certain of its former officers and employees, including senior employees, acting within the scope of their duties and authorities, would and did submit materially false and fraudulent billings to government health care programs for services not rendered or otherwise not reimbursable by government health care programs in order to fraudulently increase reimbursements from government health care programs, and correspondingly benefit MAXIM through an increase in profits.

(b) MAXIM, through certain of its former officers and employees, including senior employees, acting within the scope of their duties and authorities, in order to conceal MAXIM's submission of false and fraudulent billings to government health care programs, engaged in and utilized various acts and strategies including, but not limited to:

   i. falsely and fraudulently creating or modifying timesheets to support billings to government health care programs for services not rendered;

    ii. falsely and fraudulently submitting billings through licensed offices for care actually supervised by unlicensed offices whose existence was concealed from auditors and investigators operating on behalf of government health care programs; and

    iii. falsely and fraudulently creating or modifying documentation relating to required administrative functions associated with billings submitted to government health care programs, including documentation reflecting required training and qualifications of caregivers – for example: creating documentation to make it appear caregivers had received mandated training which, in fact, they had not received; creating documentation to make it appear caregivers' skills had been evaluated by supervisors when, in fact, they had not been; and falsifying documentation regarding caregivers' qualifications.

(c) MAXIM, through certain of its former officers and employees, including senior employees, acting within the scope of their duties and authorities, would and did engage in conduct in a concerted and organized effort to conceal and cover-up the false and fraudulent nature of various MAXIM billings to government health care programs.